UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ERIC JOSEY,

    Plaintiff,

    v.

TRANSPORTATION SECURITY
ADMINISTRATION; DAVID PEKOSKE, in his
official capacity as Administrator of the
Transportation Security Administration;
and ALEJANDRO MAYORKAS, in his official
capacity as Secretary of the U.S.
Department of Homeland Security,

    Defendants.

Civil Action No. 3:25-CV-00829-MMH-LLL

**VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff Eric Josey ("Plaintiff"), brings this action to challenge the Transportation Security Administration's ("TSA") unlawful preemptive suspension of his TSA PreCheck® expedited screening benefits for one year without PRIOR due process and thus sayeth the following:

**INTRODUCTION**

1. TSA imposed a severe preemptive suspension of the Plaintiff's TSA PreCheck® expedited screening benefits following an alleged technical violation involving transporting his lawfully owned firearm in his hardened locked checked baggage in May 2025. Despite the Plaintiff's distinguished law enforcement background, history of no prior violations, and absence of any security risk or willful misconduct, the TSA suspended his Trusted Traveler status without any PRIOR notice or opportunity to be heard and did so in violation of his rights under the Fifth

Amendment's Due Process Clause and the Administrative Procedure Act ("APA"). Plaintiff seeks immediate declaratory and injunctive relief to restore his TSA PreCheck status pending their final determination and to prevent its current ongoing irreparable harm to his professional travel obligations, as well as recovery of his court fees and litigation costs under the Equal Access to Justice Act (EAJA) (28 U.S.C. § 2412).

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the Constitution and laws of the United States. The Court also has jurisdiction under 5 U.S.C. §§ 701–706 Administrative Procedure Act (APA), which waives sovereign immunity and provides for judicial review of final agency action. Plaintiff seeks declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(e) because Plaintiff resides in this District (Flagler County, Florida) and a substantial part of the events or omissions giving rise to the claim occurred in this District. The Jacksonville Division is appropriate as Flagler County lies therein.

## PARTIES

3. The plaintiff is a citizen of the United States and is currently domiciled in the County of Flagler, Florida. Relevant to the alleged violation, Plaintiff is a retired officer of the New York City Police Department (NYPD) who served in the elite Emergency Service Unit (SWAT), a certified law enforcement officer in Florida, and is currently a public service consultant. Plaintiff currently holds credentials pursuant to 18 U.S.C. § 926C (the Law Enforcement Officers Safety Act, commonly known as ("HR 218"), which authorizes qualified retired law enforcement officers to carry a concealed firearm nationwide and is authorized under the more expansive pending ("HR 2243"), that shall authorize retired officers to carry a concealed

firearm on *"Facility Security Level I or II civilian public access facility by a qualified law enforcement..."* The plaintiff frequently travels by air across the country to lead training seminars and to review policies of law enforcement agencies. He has been enrolled in the Global Entry Trusted Traveler program for more than a decade (which includes TSA PreCheck), which has been essential to his work-related travel. The plaintiff has <u>no</u> history of TSA violations or security incidents in over 25 years of air travel with a firearm.

4. Defendant Transportation Security Administration (TSA) is a component agency of the U.S. Department of Homeland Security (DHS) responsible for aviation security, including administration of the TSA PreCheck trusted traveler program and enforcement of federal transportation security regulations. Defendant David Pekoske is the Administrator of TSA, and Defendant Alejandro Mayorkas is the Secretary of DHS; both are sued in their official capacities. Defendants are responsible for the unlawful actions described herein.

## FACTUAL ALLEGATIONS

5. On May 30, 2025, the incident occurred as the Plaintiff traveled by commercial air from Jacksonville, Florida. The plaintiff transported his registered firearm inside his checked hard-sided, locked luggage. Due to the luggage size constraints, Plaintiff was unable to use his larger firearm case. Plaintiff curbside checked in his secured luggage and believed he complied with transporting a firearm in checked baggage.

6. During routine screening of checked baggage, TSA officers discovered Plaintiff's firearm and determined that it was "improperly packaged" and/or not separately secured in a smaller locked container inside the luggage, as required by 49 C.F.R. § 1540.111(c). The firearm was discovered within his hardened locked luggage case by a TSA official during X-ray screening

in their secured basement location. The plaintiff was not charged with any crime and was fully cooperative at all times.

7. The circumstances of the incident lack willful misconduct or security risk to the public, and demonstrate that Plaintiff's actions, at most, amounted to a good-faith, unintentional packing error rather than any willful violation or attempt to circumvent security. The firearm was <u>not</u> accessible to anyone and posed no danger at the traveler screening checkpoint or on board an aircraft.

8. TSA's enforcement guidance reflects that a first-time violation involving an improperly packed or undeclared firearm in checked baggage typically warrants only a warning notice, at best. Indeed, TSA's published penalty matrix provides that for "Undeclared and/or improperly packaged unloaded firearms," a Warning Notice is the appropriate disposition for a first offense (with civil penalties only for subsequent violations). Despite this, TSA treated Plaintiff's situation far more harshly and arbitrarily in comparison to similarly situated incidents.

**Summary Imposition of One-Year Disqualification**

9. By letter dated June 13, 2025, TSA issued a Notice of Violation ("NOV") to Plaintiff, (Case No. 2025JAX0130), proposing a civil penalty in the range of approximately $1,700 for the alleged regulatory violation. The same correspondence did <u>not</u> reference the immediate suspension of his TSA PreCheck® benefits. The plaintiff did not receive any subsequent notice of the Defendant's preemptive suspension of travel benefits. Only after Plaintiff's subsequent travel through TSA screening and denied PreCheck® entry, Plaintiff was verbally notified of the defendant's suspension of his enrollment. The Plaintiff subsequently made several phone calls and email inquiries to TSA Customer Service and on July 2, 2025, the Plaintiff first received an email notice confirming suspension for one year with no further explanation. Their email reply

1 notice did not provide for an interim hearing or prompt post-deprivation review of their preemptive
2 suspension.
3    10.   TSA's policy is that if a traveler is found to have committed certain security
4 violations – including bringing a firearm (even in checked baggage) in violation of the rules – the
5 traveler is "denied expedited screening for some time," with the duration "related to the seriousness
6 of the violation." TSA publicly acknowledges that membership suspension for a first offense may
7 last up to five years. In the Plaintiff's case, TSA unilaterally imposed the maximum one-year
8 PreCheck suspension for what was, by all accounts, a minor, first-time technical infraction that
9 presented no actual security threat to passengers or personnel.

### No Prior Notice or Hearing

11.   TSA provided Plaintiff with no warning that it intended to suspend his Trusted Traveler (PreCheck) benefits, nor any opportunity to contest the suspension before it took effect. The suspension was automatic upon TSA's determination of a violation. The plaintiff did not waive any hearing; rather, TSA's regulations and policies did not afford him a meaningful way to challenge the loss of his PreCheck status as distinct from the civil penalty process.

12.   The NOV invited Plaintiff to respond regarding the proposed monetary penalty through either an "informal conference" or a formal adjudication before an Administrative Law Judge (ALJ) concerning the civil fine. However, no formal mechanism was provided to separately appeal or obtain prompt review of the suspension of PreCheck privileges, which went into effect immediately and was not stayed during the administrative penalty proceedings. In effect, TSA treated the PreCheck suspension as a collateral consequence of the alleged violation, to be endured by Plaintiff without any individualized hearing on whether such a penalty was warranted.

### Plaintiff's Administrative Response and Mitigation Efforts

13. On June 23, 2025, within the timeframe allowed, the Plaintiff submitted a written response to TSA's Special Enforcement Program Office electing an informal conference and seeking mitigation of the proposed civil penalty. In his response, Plaintiff accepted responsibility for the packaging error but emphasized several mitigating factors:

> (a) His distinguished 20+ year career in law enforcement (including SWAT experience) and current status as an HR 218-qualified retired officer.

> (b) His flawless record of compliance with TSA and FAA regulations over decades of travel, with no prior violation incidents.

> (c) The lack of any criminal intent or dangerous conduct is evident by the firearm being secured in a hardened suitcase and properly checked in. This incident was a good-faith mistake and not a willful flouting of rules.

> (d) His prompt corrective action after the incident by his immediate purchase of a TSA-compliant hard-sided smaller firearm case to use in the future, ensures full compliance going forward.

14. The plaintiff provided evidence of the new case purchase and reiterated his commitment to abide by all security requirements. Given these factors, Plaintiff requested that TSA exercise leniency by waiving or substantially reducing the fine and by issuing at most a formal warning instead of any penalty. Crucially, Plaintiff also specifically urged TSA to reinstate his Global Entry enrollment, noting that the loss of expedited screening imposed a significant hardship on him as a frequent traveler with essential professional obligations.

### Request for Interim Reinstatement Denied/Ignored

15. After submitting his response, Plaintiff received an acknowledgement from TSA that his case had been forwarded to an agency attorney for review and that the resolution process could take several months. Aware that he had urgent upcoming travel and that the administrative process would likely not conclude before his travel dates, Plaintiff made a further interim relief

request to TSA. By letter dated June 27, 2025, the Plaintiff formally requested that TSA immediately restore his TSA PreCheck benefits for the duration of the administrative proceedings, rather than await a final decision, citing fundamental fairness and due process considerations.

16. In that letter, Plaintiff invoked the balancing test from *Mathews v. Eldridge*, highlighting that: (a) his private interest in retaining PreCheck (timely, efficient travel for work) was substantial; (b) the risk of erroneous or excessive deprivation was high given his lack of history and the minor nature of the incident; and (c) TSA's interest in security would not be compromised by interim relief, since Plaintiff is a vetted, low-risk traveler (as evidenced by his background and credentials) and he remains subject to screening in any event.

17. Plaintiff also noted that depriving him of a significant travel privilege with no hearing appeared inconsistent with due process precedent requiring notice and opportunity to be heard before important benefits are taken. As of the filing of this Complaint, TSA has not granted the requested interim reinstatement of PreCheck. TSA has effectively refused to provide any timely relief or dedicated procedure to address the suspension, leaving Plaintiff to endure the penalty for many months while waiting for the slow administrative penalty process to conclude.

18. Harm to Plaintiff: The one-year TSA PreCheck suspension has caused and continues to cause Plaintiff immediate and ongoing harm. The Plaintiff's ability to do his job as a public safety consultant requires frequent air travel. The TSA PreCheck program, for which Plaintiff paid an enrollment fee and which he has participated in for years, enables him to pass through airport security screening more efficiently by using dedicated lanes and simplified screening measures. Loss of this Trusted Traveler benefit forces Plaintiff to undergo standard screening for the next year, subjecting him to substantially longer lines, delays, and more intrusive screening protocols each time he travels. This undermines Plaintiff's professional obligations: for

example, Plaintiff has work-related flights scheduled for September 2025 and beyond, where time is of the essence in meeting speaking or training engagements.

19.  Without PreCheck, he faces a heightened risk of missing flights or incurring travel delays that could damage his professional reputation and opportunities. Moreover, TSA's action effectively brands Plaintiff as a higher-risk traveler (removing him from the Trusted Traveler population) despite the absence of any genuine security threat, which is stigmatizing and humiliating for someone with Plaintiff's law enforcement service record. The suspension also deprives Plaintiff of the benefit of the bargain of his TSA PreCheck enrollment (which is normally valid for five years). In short, Plaintiff is suffering significant inconvenience, lost time, and reputational injury, none of which can be remedied by monetary damages.

20.  The harm is particularly pronounced given that it results from a purported violation that is still under review and has not been adjudicated; yet by the time TSA's administrative process concludes (and even if Plaintiff is ultimately exonerated or given a reduced sanction), he will have already been deprived of PreCheck for many months. The plaintiff has exhausted all feasible administrative remedies to obtain relief. Further pursuit of administrative redress would be futile and inadequate to prevent irreparable injury, as TSA has made clear that it will not expedite or reverse the PreCheck suspension during the pendency of the enforcement proceeding. Accordingly, Plaintiff now turns to this Court to vindicate his rights.

## CLAIMS FOR RELIEF

## COUNT I

### VIOLATION OF THE FIFTH AMENDMENT (PROCEDURAL DUE PROCESS) AND THE ADMINISTRATIVE PROCEDURE ACT

21. Plaintiff incorporates by reference all preceding paragraphs against all Defendants, acting under color of federal law, who have deprived Plaintiff of a liberty and/or property interest – his TSA PreCheck trusted traveler privileges and the associated benefits of expedited airport screening – without due process of law, in contravention of the Fifth Amendment to the United States Constitution. Plaintiff has a legitimate and substantial interest in his continued participation in the TSA PreCheck program, an interest which implicates both his freedom to travel and entitlements conferred by the government.

22. By summarily suspending Plaintiff's PreCheck membership for a full year, without providing him notice of the specific grounds, without affording him a meaningful opportunity to contest the suspension or present evidence and mitigating factor to a neutral decision-maker, and without conducting any hearing or adjudication before or immediately after the deprivation, Defendants failed to provide the procedural safeguards required by the Constitution.

23. Plaintiff's interest in avoiding erroneous or unfair suspension of his travel privileges is great, particularly given his reliance on expedited screening for his livelihood and the stigma attached to being treated as a higher-risk traveler. There was a serious risk of erroneous deprivation here because TSA suspended automatically, based solely on an alleged violation that had not been proven in any hearing, and without considering the individual circumstances or mitigating factors indicating Plaintiff poses no security threat. Additional or substitute procedural protections – such as providing a prompt post-suspension hearing or interim relief pending review – would have greatly reduced the risk of error, imposing only a minimal burden on the government.

24. The government's interest, while significant in maintaining aviation security, does not justify dispensing with due process in this context; indeed, continuing to allow Plaintiff the use of TSA PreCheck lanes (subject to all normal security screening) pending a hearing would not

have materially undermined any security interest, given Plaintiff's background and continued screening. Thus, Defendants failed the balancing test outlined in *Mathews v. Eldridge*, 424 U.S. 319 (1976), by depriving Plaintiff of an important benefit without appropriate procedural safeguards. Except in truly extraordinary situations, due process requires notice and a hearing before the government imposes a deprivation of liberty or property, and no such extraordinary circumstances existed here to justify the lack of pre-deprivation process.

25. Defendants' actions violate Plaintiff's rights under the Fifth Amendment's Due Process Clause. Because there is no adequate alternative remedy against TSA for this constitutional violation, Plaintiff seeks relief under the APA as well. The APA provides that a reviewing court shall "hold unlawful and set aside" agency action found to be "contrary to constitutional right" or taken "without observance of procedure required by law." 5 U.S.C. § 706(2)(B), (D).

26. TSA's one-year suspension of Plaintiff's TSA PreCheck privileges, implemented with no prior notice or hearing, is an agency action that is contrary to constitutional right – namely, Plaintiff's right to procedural due process – and occurred without observance of the procedure that due process requires. Accordingly, the Defendants' action is unlawful under the APA. Plaintiff is entitled to declaratory and injunctive relief to redress this violation: specifically, an order declaring that Defendants' suspension of his TSA PreCheck enrollment is void and unconstitutional and restoring Plaintiff's trusted traveler privileges.

## COUNT II

## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT
## (ARBITRARY AND CAPRICIOUS AGENCY ACTION)

27.     Plaintiff incorporates by reference all preceding paragraphs against all Defendants, Defendants' decision to suspend Plaintiff's TSA PreCheck privileges for one year was arbitrary, capricious, an abuse of discretion, and not in accordance with law, in violation of the APA, 5 U.S.C. § 706(2)(A). Even setting aside the lack of hearing, the substance of TSA's decision was irrational and unsupported by the facts and evidence:

- No Evidence of Security Threat: Defendants imposed the maximum one-year disqualification as if Plaintiff were a danger to aviation security, yet there is no evidence whatsoever that Plaintiff poses any security risk. The plaintiff is a long-time trusted traveler who has passed all background checks associated with TSA PreCheck and HR 218 credentials. The incident at issue did not involve any attempt to bypass security screening or any act of violence or threat. At most, it was a technical packaging violation, which was fully resolved at the airport when the firearm was discovered and retained by authorities until properly secured. TSA's severe punitive response lacks a rational connection between the facts (an inadvertent mistake by an otherwise model traveler) and the choice made (branding him ineligible for expedited screening for a year).

- Disregard of Mitigating Factors and Agency Guidance: Defendants failed to consider important aspects of the problem. They ignored compelling mitigating factors demonstrating that Plaintiff's conduct was neither willful nor likely to recur: his decades of spotless compliance record, law enforcement training, and immediate corrective measures. TSA's enforcement guidance indicates that a first-time offense of the nature alleged (improperly packaged unloaded firearm in checked baggage) should typically result in a Warning Notice rather than any penalty. By deviating drastically from this guidance and suspending Plaintiff's privileges without explanation, Defendants acted inconsistently and without reasoned analysis. The severity of the sanction is grossly disproportionate to the minor infraction, suggesting the agency either considered impermissible factors or entirely failed to consider the relevant factor of the Plaintiff's lack of culpability.

- Lack of Explanation: Defendants have never articulated a satisfactory explanation why a full year's PreCheck suspension (with its attendant burdens on Plaintiff's travel) is warranted in this case. The form notice merely referred to a regulatory violation, without any reasoning as to why such a lengthy exclusion was necessary for security or appropriate given Plaintiff's circumstances. An action of this magnitude, taken without a reasoned basis, is the epitome of arbitrary and capricious agency action.

28.  By imposing a draconian penalty that runs counter to the evidence before the agency (which showed Plaintiff to be a low-risk, responsible traveler) and by failing to consider less onerous alternatives or relevant mitigating information, Defendants acted arbitrarily and capriciously. The suspension decision also constitutes agency action over statutory authority to the extent it violates the APA and the Constitution. Accordingly, pursuant to 5 U.S.C. § 706, Plaintiff is entitled to relief setting aside the suspension of his TSA PreCheck privileges as unlawful. The plaintiff seeks an order from this Court declaring that the one-year suspension was arbitrary, capricious, and unlawful, and enjoining Defendants from continuing to enforce it.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter an order and judgment that may GRANT the following relief:

a) A declaratory judgment pursuant to 28 U.S.C. § 2201 that Defendants' suspension of Plaintiff's TSA PreCheck enrollment and Trusted Traveler privileges without affording due process is unconstitutional.

b) An order and permanent injunction setting aside and vacating Defendants' preemptive suspension of Plaintiff's TSA PreCheck status and directing the immediate reinstatement of Plaintiff's TSA PreCheck, and further prohibit Defendants from imposing any future suspension or revocation of Plaintiff's TSA PreCheck or Trusted Traveler privileges based on the May 30, 2025 incident, unless and until Plaintiff is provided with notice, a hearing, and an adjudication that comports with due process of law.

c) Preliminary injunctive relief (as outlined in a separately filed motion), to restore Plaintiff's TSA PreCheck privileges during the pendency of this action on an expedited basis to prevent irreparable harm.

d) An award Plaintiff reimbursement of his Court fees and litigation costs incurred in bringing this action as provided by the Equal Access to Justice Act, 28 U.S.C. § 2412, or other applicable law.

e) An award of such further relief as the Court deems just and proper in the interests of justice.

Dated: July 23, 2025.

Respectfully submitted,

/s/ *Eric Josey*
ERIC JOSEY,
250 Palm Coast Pkwy NE
Suite 607, PMB 173
Palm Coast, FL 32137
Email: premier.consulting173@aol.com
Phone: (917) 882-1330

*For the Petitioner*

## **VERIFICATION**

I, ERIC JOSEY, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746, and under the laws of the United States of America as follows:

I am the Plaintiff in the above-entitled action. I have promulgated the foregoing Verified Complaint and know the contents thereof and the same is true to the best of my knowledge except as to matters therein stated to be alleged on information and belief, and to those matters, I believe them to be true.

Dated this 23rd day of July 2025

By: /s/ *Eric Josey*
ERIC JOSEY, Plaintiff

Page 13 of 14
