UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ERIC JOSEY,

    Plaintiff,

v.                                     Case No. 3:25-cv-829-MMH-LLL

TRANSPORTATION SECURITY
ADMINISTRATION, et al.,

    Defendants.

## O R D E R

**THIS CAUSE** is before the Court on Plaintiff, Eric Josey's Emergency Motion for Order to Show Cause and for Interim Injunctive Relief (Doc. 3; Motion), filed on July 23, 2025. On the same day, Josey filed a two-count Verified Complaint for Declaratory Judgment, Preliminary and Permanent Injunctive Relief and Damages (Doc. 1; Complaint) against Defendants the Transportation Security Administration (TSA), David Pekoske, in his official capacity as Administrator of TSA, and Alejandro Mayorkas, in his official capacity as Secretary of the United States Department of Homeland Security (DHS).[1] As to both of his claims, Josey seeks (1) an order directing Defendants

---

[1] Josey asserts claims for violations of the Fifth Amendment Due Process clause and the Administrative Procedure Act (APA). See Complaint at 8–12. Josey sues TSA and the TSA Administrator in his official capacity, but these two defendants are really one legal entity, and the Court will refer to this entity as TSA. See McMillian v. Monroe Cnty., 520 U.S. 781, 785

to show cause at a hearing why the Court should not issue a preliminary injunction, and (2) temporary injunctive relief pending resolution of his motion for a preliminary injunction. <u>See</u> Motion at 3–4 ("[Josey] respectfully requests that the Court issue an Order directing Defendants to appear and show cause why a preliminary injunction should not be granted. … Plaintiff further moves the Court to grant interim injunctive relief … to remain in effect until the Court's determination on the requested preliminary injunction."). Specifically, Josey requests the entry of a temporary restraining order to restrain and enjoin Defendants "from continuing to enforce the suspension of [his] TSA PreCheck (Trusted Traveler) enrollment." <u>See</u> [Proposed] Order Granting Emergency Motion for Order to Show Cause for Interim Injunctive Relief (Doc. 3-1; Proposed Order) at 2. Upon review, the Court finds that a hearing is unnecessary and the Motion is due to be denied as to Josey's requests for both temporary and preliminary injunctive relief because Josey has failed to demonstrate that he faces a likelihood of irreparable harm in the absence of injunctive relief. Additionally, the Court finds it appropriate to address <u>sua sponte</u> several other matters, including the fact that Josey's Complaint is due to be stricken as an impermissible shotgun pleading.

---

n.2 (1997) ("We have explained that a suit against a governmental officer 'in his official capacity' is the same as a suit 'against [the] entity of which [the] officer is an agent[.]'" (quoting <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985)) (nested quotation marks and citation omitted) (alterations in original)).

**I.      Background**[2]

Josey is a retired police officer who served in the New York City Police Department SWAT unit and as a deputy in Florida. See Declaration of Eric Josey Pursuant to 28 U.S.C. § 1746 (Doc. 6; Josey Declaration), ¶ 3. He now works as a public safety consultant, a job that "requires frequent air travel." See id. ¶ 3; Complaint ¶ 18. For over ten years, he "has been enrolled in the Global Entry Trusted Traveler program," a program that "includes TSA PreCheck [(PreCheck)]." See Complaint ¶ 3. PreCheck is administered by TSA, which is a component agency of DHS. Id. ¶ 4. PreCheck, which Josey pays for, "enables him to pass through airport security screening more efficiently by using dedicated lanes and simplified screening measures." Id. ¶ 18.

On May 30, 2025, Josey packed a lawfully carried and "registered firearm inside his checked hard-sided, locked luggage" as he prepared to travel by commercial air service departing from Jacksonville, Florida. Id. ¶ 5. In a routine screening, "TSA officers discovered [Josey's] firearm and determined that it was 'improperly packaged' and/or not separately secured in a smaller locked container inside the luggage, as required by 49 C.F.R. § 1540.111(c)." Id. ¶ 6. Shortly afterwards, TSA issued Josey a Notice of Violation letter (NOV)

---

[2] The facts summarized here are drawn entirely from Josey's pleadings and declaration. As such, they are subject to change once Defendants have appeared and responded to Josey's allegations.

"proposing a civil penalty … of approximately $1,700 for the alleged regulatory violation." Id. ¶ 9; Josey Declaration ¶ 5.[3] "On June 13, 2025, while going through TSA screening for an unrelated flight, [Josey] first learned that [his] TSA PreCheck status was suspended." See Josey Declaration ¶ 7.

According to Josey, TSA suspended his PreCheck status without providing him a hearing or other opportunity to respond to the allegation that he violated 49 C.F.R. § 1540.111(c) or to contest the PreCheck suspension. Id. ¶¶ 8, 10; Complaint ¶ 9, 11. Notably, in the NOV, TSA "invited [Josey] to respond regarding the proposed monetary penalty through either an 'informal conference' or a formal adjudication … ." See Complaint ¶ 12. "However, no formal mechanism was provided to separately appeal or obtain prompt review of the suspension of PreCheck privileges, which went into effect immediately and was not stayed during the administrative penalty proceedings." Id. On June 23, 2025, Josey responded to the NOV "electing an informal conference." Id. ¶ 13. In that response, he also "accepted responsibility for the packaging error," presented mitigating factors, and "urged TSA to reinstate his Global Entry enrollment … ." Id. ¶¶ 13, 14. TSA notified him "that the resolution process could take several months." Id. ¶ 15. Because of this, on June 27, 2025, Josey

---

[3] In his Complaint, Josey states the letter was dated June 13, 2025. See Complaint ¶ 9. But in his declaration, Josey states he received the letter June 10. See Josey Declaration ¶ 5. This discrepancy is not material to resolving the Motion.

contacted TSA seeking "interim relief." Id. TSA has not granted Josey any interim relief. Id. ¶ 17. Instead, "on July 2, 2025, [Josey] received email notice that [his] TSA PreCheck status was preemptively suspended for a period of one year due to the alleged violation." See Josey Declaration ¶ 7.

Loss of PreCheck "forces [Josey] to undergo standard screening for the next year, subjecting him to substantially longer lines, delays, and more intrusive screening protocols each time he travels." See Complaint ¶ 18. "Without PreCheck, he faces a heightened risk of missing flights or incurring travel delays that could damage his professional reputation and opportunities." See Complaint ¶ 19. He contends these risks are imminent considering he "has work-related flights scheduled for September 2025 and beyond, where time is of the essence in meeting speaking or training engagements." Id. ¶ 18. Additionally, according to Josey, his loss of PreCheck "brands [him] as a higher-risk traveler … which is stigmatizing and humiliating for someone with [his] law enforcement service record." Id. ¶ 19.

**II.     Legal Standard**

A.     Preliminary Injunction

A preliminary injunction is an extraordinary and drastic remedy. See McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998); see also Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."); Davidoff &

CIE, S.A. v. PLD Int'l Corp., 263 F.3d 1297, 1300 (11th Cir. 2001). Indeed, "[a] preliminary injunction is a powerful exercise of judicial authority in advance of trial." Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, 896 F.2d 1283, 1284 (11th Cir. 1990).

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter, 555 U.S. at 20. The Eleventh Circuit has described the heavy burden on a party seeking preliminary injunctive relief as follows:

> A district court may grant a preliminary injunction only if the moving party establishes that: (1) it has a substantial likelihood of success on the merits; (2) it will suffer an irreparable injury unless the injunction is granted; (3) the harm from the threatened injury outweighs the harm the injunction would cause the opposing party; and (4) the injunction would not be adverse to the public interest.

Gonzalez v. Governor of Ga., 978 F.3d 1266, 1270–71 (11th Cir. 2020); see also Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (per curiam) (en banc).

The movant, at all times, bears the burden of persuasion as to each of these requirements. See Ne. Fla. Chapter, 896 F.2d at 1285. And, a party's failure to establish any one of the essential elements will warrant denial of the request for preliminary injunctive relief and obviate the need to discuss the

remaining elements. See Pittman v. Cole, 267 F.3d 1269, 1292 (11th Cir. 2001) (citing Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir. 1994)). Notably, "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." Id. (quoting Sampson v. Murray, 415 U.S. 61, 88 (1974)). Indeed, "[a] showing of irreparable injury is 'the sine qua non of injunctive relief.'" Siegel, 234 F.3d at 1176 (quoting Ne. Fla. Chapter, 896 F.2d at 1285). As such, even if a party "establish[es] a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." Siegel, 234 F.3d at 1176; see also Ne. Fla. Chapter, 896 F.2d at 1285 (reversing the entry of injunctive relief where the plaintiff failed to show irreparable harm).

  B.  Temporary Restraining Order

To obtain a temporary restraining order, a plaintiff must establish the same four elements as those required to obtain a preliminary injunction. Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (citing Ingram v. Ault, 50 F.3d 898, 900 (11th Cir. 1995); Siegel, 234 F.3d at 1176). In addition, under Rule 65(b) of the Federal Rules of Civil Procedure (Rule(s)), the Court may only "issue a temporary restraining order without written or oral notice to the adverse party" if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or

damage will result to the movant before the adverse party can be heard in opposition[.]" Fed. R. Civ. P. 65(b)(1)(A).

### III. Discussion[4]

In resolving the Motion, the Court begins and ends with considering whether Josey demonstrates a likelihood that he will suffer irreparable harm absent entry of injunctive relief. See Siegel, 234 F.3d at 1176; Ne. Fla. Chapter, 896 F.2d at 1285. He does not.

The Supreme Court has emphasized that "plaintiffs seeking preliminary relief" must "demonstrate that irreparable injury is likely in the absence of an injunction." Winter, 555 U.S. at 22. "[T]he asserted irreparable injury must be neither remote nor speculative, but actual and imminent." Swain v. Junior, 961 F.3d 1276, 1292 (11th Cir. 2020) (quoting Siegel, 234 F.3d at 1176). In his effort to demonstrate a likelihood of irreparable harm, Josey first contends that "the violation of constitutional rights for even minimal periods constitutes irreparable harm." See Memorandum of Law in Support of Plaintiff's Motion for Order to Show Cause and Preliminary Injunction (Doc. 4; Memorandum), filed July 23, 2025, at 11 (citing Elrod v. Burns, 427 U.S. 347, 373 (1976) and

---

[4] The Court notes that, as Defendants have not yet appeared and the Motion is one for preliminary injunctive relief that is necessarily before the Court on an expedited schedule, the following conclusions of law do not necessarily reflect what may be established on a record more fully developed following trial on these issues. Accordingly, the determinations in this Order are expressly limited to the record before the Court at this time and should not be interpreted as a final decision regarding any disputed issues of law or fact. These findings do not foreclose any argument at later stages of the proceedings.

Deerfield Med. Ctr v. City of Deerfield Beach, 661 F.2d 328, 338 (5th Cir. Unit B 1981)).[5] He cites two cases in support of this contention, but neither supports the broad proposition for which Josey cites it. In Elrod, the Supreme Court held that when a plaintiff establishes a sufficient threat of a First Amendment violation, this "unquestionably constitutes irreparable injury." Elrod, 427 U.S. at 373. In Deerfield Medical, the former Fifth Circuit held that when a plaintiff establishes a sufficient threat of a privacy right violation, "this conclusion mandates a finding of irreparable injury." Deerfield Medical, 661 F.2d at 338. Both Elrod and Deerfield Medical rested their holdings on the unique nature of the constitutional rights at issue in those cases, and neither purported to set forth a categorical rule that any threatened constitutional violation satisfies the requirement of showing irreparable harm to obtain preliminary injunctive relief. See generally Elrod, 427 U.S. at 373; Deerfield Medical, 661 F.2d at 338. Notably, neither First Amendment rights (like those in Elrod) nor privacy rights (like those in Deerfield Medical) are implicated in this case. Given that Josey fails to explain how or why these cases apply in the context of his procedural due process claim, his reliance on this authority is unavailing. See Cunningham

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. Id. at 1209. "Although Deerfield is a post-September 30, 1981, decision of a Unit B panel of the former Fifth Circuit," courts in this circuit "regard[] the decision as binding precedent … ." Doe v. Busbee, 684 F.2d 1375, 1378 n.2 (11th Cir. 1982) (quoting Stein v. Reynolds Secs., Inc., 667 F.2d 33, 34 (11th Cir. 1982)).

v. Adams, 808 F.2d 815, 822 (11th Cir. 1987) (explaining that, in light of Deerfield Medical, the ultimate question of irreparable harm must be answered with reference to whether the asserted constitutional violation can be compensated by monetary damages or by prevailing in the litigation). Josey has provided no other legal authority supporting the contention that he is entitled to a presumption of irreparable harm based on the alleged violation of his procedural due process rights.

Josey next contends that the nature of his asserted injuries and the potential future relief available to him demonstrate that he faces a likelihood of irreparable harm. See Memorandum at 11–12. According to Josey:

> [Josey's] business and professional opportunities depend on his ability to travel by air efficiently. Missing flights or facing substantial delays and uncertainties at TSA checkpoints can lead to missed engagements, lost income, and damage to his reputation for reliability, none of which can be undone after the fact. …
>
> Moreover, [Josey's] PreCheck membership is a time-limited benefit, typically a five-year enrollment. Every month of suspension is lost time that cannot simply be tacked on later. … Thus, if no injunction … issues and [Josey] later wins on the merits, he will have lost a substantial chunk of his paid trusted traveler benefits with no mechanism for restoration, a classic irreparable injury scenario.
>
> [Josey] also suffers intangible harm from being labelled ineligible for expedited screening. Being removed from the Trusted Traveler program suggests a trust deficit that is unwarranted and personally distressing given [his] life of service. …

> Finally, the timing is such that without interim relief, the case could effectively become moot…. If the Court denies preliminary relief and requires [Josey] to wait for final judgment … by the time he wins, the one-year suspension may have run its course or substantially elapsed.

Id. at 11–12. As to Josey's assertion that absent an injunction, if he "wins on the merits, he will have lost a substantial chunk of his paid trusted traveler benefits with no mechanism for restoration," this contention is unsupported in law or fact. Indeed, by Josey's own admission, TSA policies permit time lost due to suspension of PreCheck status to be "refunded or added to one's membership" if the agency erred. Id. at 11. Moreover, the fact Josey paid for the benefit of PreCheck—a completely optional service—undermines his claim that his harms are irreparable because at the very least, he could seek a refund of his payment if TSA fails to give him the benefit of his bargain.

To the extent Josey contends that undergoing non-PreCheck TSA screenings itself constitutes irreparable harm, common sense belies this assertion because such harm is minimal. Every day, countless people including business travelers like Josey pass through TSA screenings without using PreCheck.[6] The fact that submission to TSA screenings without PreCheck is so

---

[6] According to TSA's public website, on June 13, 2025, the day Josey was first denied PreCheck at the airport, 2,864,272 people traveled through TSA checkpoints. See https://www.tsa.gov/travel/passenger-volumes, accessed July 29, 2025. Though the Court does not take this figure as a fact, no one could reasonably dispute that thousands of people pass through airport security without PreCheck every day.

commonplace undermines Josey's assertion that going through regular airport security constitutes an irreparable injury. Moreover, while Josey asserts that losing PreCheck could cause his travels to be delayed, he ignores the fact that his flights will leave and arrive at the same times regardless of whether he goes through regular security screening or PreCheck. And Josey's broad generalizations about his career and reputation in law enforcement and his assertions that the suspension is "personally distressing" fail to support a finding that he will suffer a legally cognizable and irreparable harm if his PreCheck status is not restored pending resolution of his claims on the merits. See, e.g., Mustapha Assi v. U.S. Dep't of Homeland Sec., No. 23-CV-23596, 2025 WL 1880338, at *10 (S.D. Fla. July 8, 2025) ("In short, TSA PreCheck isn't a 'right or status that has been previously recognized and protected under law[.]'" (quoting Behrens v. Regier, 422 F.3d 1255, 1261 (11th Cir. 2005) (alterations adopted))). As such, the Court finds that Josey has failed to meet his burden to establish that he faces a likelihood of suffering irreparable harm in the absence of preliminary or temporary injunctive relief and the Motion is due to be denied.[7]

---

[7] In denying the Motion, the Court need not and does not address the other elements necessary to obtain preliminary injunctive relief or express any view on the merits of Josey's claims. See Pittman, 267 F.3d at 1292; Wreal, LLC v. Amazon.com, Inc., 840 F.3d 1244, 1249 (11th Cir. 2016).

## IV. Other Matters

Josey proceeds pro se. While pro se complaints are held to a less stringent standard than those drafted by an attorney, Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986), the pro se litigant is still required to "conform to procedural rules." Loren v. Sasser, 309 F.3d 1296, 1304 (11th Cir. 2002); see also Roy v. Ivy, 53 F.4th 1338, 1346 (11th Cir. 2022). Upon review of Josey's filings, the Court finds that Josey has violated several procedural rules.

As a preliminary matter, Josey's filings violate at least two of the Local Rules of the United States District Court for the Middle District of Florida (Local Rule(s)).[8] Throughout his filings, Josey violates Local Rule 1.08, which sets forth typeface, formatting, and spacing requirements for all papers filed with the Court. And by filing his Motion separately from his Memorandum, Josey violates Local Rule 3.01(a), which requires that a motion include a memorandum of law "in a single document."

Additionally, a complaint may not run afoul of the Eleventh Circuit's prohibition against shotgun pleading. See generally Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1321–23 (11th Cir. 2015) (outlining four broad categories of impermissible shotgun pleadings).[9] The Eleventh Circuit

---

[8] All filings with the Court must be made in accordance with the requirements of the Rules and the Local Rules. The Local Rules are available for review at www.flmd.uscourts.gov, and a copy may be obtained by visiting the Clerk's Office. The Federal Rules of Civil Procedure are available online and in state court law libraries.

[9] The Eleventh Circuit has summarized the four categories of shotgun complaints as

has unequivocally instructed that shotgun pleadings are "altogether unacceptable." Cramer v. State of Fla., 117 F.3d 1258, 1263 (11th Cir. 1997); see also Cook v. Randolph Cnty., 573 F.3d 1143, 1151 (11th Cir. 2009) ("We have had much to say about shotgun pleadings, none of which is favorable." (collecting cases)). Indeed, the Eleventh Circuit has engaged in a "thirty-year salvo of criticism aimed at shotgun pleadings, and there is no ceasefire in sight." Weiland, 792 F.3d at 1321; see, e.g., id. at 1321 n.9 (collecting cases). As the court in Cramer recognized, "[s]hotgun pleadings, whether filed by plaintiffs or defendants, exact an intolerable toll on the trial court's docket, lead to unnecessary and unchannelled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources." Cramer, 117 F.3d at 1263. As such, when faced with the burden of deciphering a shotgun pleading, it is the trial court's obligation to strike the pleading on its own initiative and force the plaintiff to replead to the extent possible under Rule

---

follows:
> The first [category] is "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." The second is a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." The third is a complaint that does not separate "each cause of action or claim for relief" into a different count. And the final type of shotgun pleading is a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."

Barmapov v. Amuial, 986 F.3d 1321, 1324–25 (11th Cir. 2021) (quoting Weiland, 792 F.3d at 1321–23).

11. See id. (admonishing district court for not striking shotgun complaint on its own initiative); see also Weiland, 792 F.3d at 1321 n.10 ("[W]e have also advised that when a defendant fails to [move for a more definite statement], the district court ought to take the initiative to dismiss or strike the shotgun pleading and give the plaintiff an opportunity to replead.").

Relevant here are two kinds of shotgun complaints. The first is the "most common type" of shotgun complaint, one in which the plaintiff asserts "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." See Weiland, 792 F.3d 1313, 1321, 1321 n.11 (collecting cases). As a result, "most of the counts … contain irrelevant factual allegations and legal conclusions." Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002). Consequently, in ruling on the sufficiency of a claim, the Court is faced with the onerous task of sifting out irrelevancies in order to decide for itself which facts are relevant to a particular cause of action asserted. See id. In the second count of his Complaint, Josey "incorporates by reference all preceding paragraphs against all Defendants … ." See Complaint ¶ 27. This manner of pleading falls squarely into the first category of impermissible shotgun pleadings. See Barmapov, 986 F.3d at 1325; see also Sarhan v. Miami Dade Coll., 800 F. App'x 769, 771–72 (11th Cir. 2020).

The second kind of shotgun complaint relevant here is the type of improper pleading that occurs when the plaintiff "commits the sin of not separating into a different count each cause of action or claim for relief." See Weiland, 792 F.3d at 1322–23; see, e.g., id. at 1323 n.13 (collecting cases). Indeed, Rule 10(b) requires that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence … must be stated in a separate count … ." Rule 10(b); see also Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996) (explaining that a properly drawn complaint "will present each claim for relief in a separate count, as required by Rule 10(b), and with such clarity and precision that the defendant will be able to discern what the plaintiff is claiming and to frame a responsive pleading" (footnote omitted)). Here, in Count I of his Complaint, Josey appears to bring claims under both the Due Process clause and under the APA. See Complaint at 8 (captioning Count I "Violation of the Fifth Amendment (Procedural Due Process) and the Administrative Procedure Act"); id. ¶ 25 (stating that Josey brings an action under the Due Process clause and under the APA). Because Due Process claims have different requirements than APA claims, to the extent Josey seeks to bring claims under both the Due Process clause and the APA, each claim should be set forth in a separately identified count. Josey's Complaint is an impermissible shotgun pleading. As such, the Court will strike the filing and direct Josey to file a corrected complaint. See Holbrook v. Castle

Key Ins. Co., 405 F. App'x 459, 460–61 (11th Cir. 2010) ("The district court has the inherent authority sua sponte to require the plaintiff to file a more definite statement."). Failure to comply with the Rules and this Order may result in dismissal of this action without further notice.

Prior to filing his corrected complaint, the Court encourages Josey to consider consulting with a legal aid organization that offers free legal services, such as Jacksonville Area Legal Aid (JALA). Alternatively, the Jacksonville Federal Court Bar Association operates a Legal Information Program. Through that program, pro se litigants may meet with a lawyer for free to ask general questions about procedures governing cases in federal court. Josey may call the Clerk's Office at (904) 549-1900 to request an appointment. More information about the program is available on the Court's website at www.flmd.uscourts.gov/legal-information-program.[10]

Accordingly, it is

**ORDERED:**

1. Plaintiff, Eric Josey's Emergency Motion for Order to Show Cause and for Interim Injunctive Relief (Doc. 3) is **DENIED**.

---

[10] In preparing the corrected complaint and any future filings, the Court recommends that Josey visit the Court's website (www.flmd.uscourts.gov). Under the tab entitled, "For Litigants," there is a section entitled, "Litigants Without Lawyers." In this section, there are many resources available to pro se parties, including a Handbook called "Guide for Proceeding Without a Lawyer."

2. Josey's Verified Complaint for Declaratory Judgment, Preliminary and Permanent Injunctive Relief and Damages (Doc. 1) is **STRICKEN**.[11]

3. On or before **August 19, 2025**, Josey shall file a Corrected Complaint that complies with the Federal Rules of Civil Procedure and the directives of this Order.

**DONE AND ORDERED** in Jacksonville, Florida on July 29, 2025.

*[Signature]*

MARCIA MORALES HOWARD
United States District Judge

lc33

Copies to:
Pro Se Party
Counsel of Record

---

[11] The filing of the corrected complaint does not affect any right Josey may have to amend as a matter of course under Rule 15(a)(1).