

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ERIC JOSEY,                              )
                                         )
        Plaintiff,                       )
                                         )
        v.                               )    Civil No. 3:25-cv-00829-MMH-LLL
                                         )
TRANSPORTATION SECURITY                  )
ADMINISTRATION; DAVID PEKOSKE, in his    )
official capacity as Administrator of the )
Transportation Security Administration;  )
and ALEJANDRO MAYORKAS, in his official  )
capacity as Secretary of the U.S.        )
Department of Homeland Security,         )
                                         )
        Defendants.                      )
_____)

**AMENDED VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Eric Josey ("Plaintiff") submits his Amended Verified Complaint in accordance with the court's order and directives at (Doc. 9). This cause of action remains a constitutional matter against the Transportation Security Administration (TSA), David Pekoske, and Alejandro Mayorkas (collectively, "Defendants"), challenging the Transportation Security Administration's ("TSA"), to preemptively suspend Plaintiff's TSA PreCheck® expedited screening benefits for one year without

procedural due process and subsequently fine the Plaintiff $1,700.00 by Notice of Violation ("NOV"). Plaintiff thus sayeth the following:

## INTRODUCTION

1.    This action is in response to an alleged technical regulatory violation that occurred on May 30, 2025, involving the Plaintiff's transport of his lawfully owned firearm in his checked hardened baggage which led to the TSA's preemptive one-year suspension of the Plaintiff's TSA PreCheck® trusted traveler privileges without prior notice or due process and their subsequent assessment of a $1700.00 fine via their NOV. The Plaintiff's response letter proffered mitigating factors of his background in law enforcement, his unblemished TSA travel record, and that the incident involved no security risk or intentional misconduct. The Plaintiff asserts that his TSA PreCheck status was suspended without prior notification or opportunity to be heard, which constitutes a violation of his rights under the Fifth Amendment's Due Process Clause and the Administrative Procedure Act (APA).

2.    Plaintiff brings this declaratory judgment action to restore his TSA PreCheck status, to expunge TSA's record of the suspension and fine, and to prevent ongoing irreparable harm to his professional travel obligations. This is a constitutional challenge for injunctive relief, as well as recovery of litigation costs and fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412.

## JURISDICTION AND VENUE

3.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the Constitution and laws of the United States.  The Court also has jurisdiction under the APA, 5 U.S.C. §§ 701–706, which waives sovereign immunity and provides for judicial review of final agency action.  Further administrative review is futile, which preserves jurisdiction under APA § 704.  Plaintiff seeks declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202 (Declaratory Judgment Act).

4.      Venue in the Middle District of Florida under 28 U.S.C. § 1391(e), is proper because the Plaintiff resides in this District, and the events or omissions giving rise to the claims occurred in the airport within this District.  Assignment to the Jacksonville Division is appropriate because Duval County is within this jurisdiction.

## PARTIES

5.      Plaintiff Eric Josey is a United States citizen who resides in Flagler County, Florida. He is a retired officer of the New York City Police Department, where he served in the Emergency Service Unit ("SWAT").  He was subsequently employed in law enforcement in Florida and is now employed as a public safety consultant and instructor.  Plaintiff holds credentials under 18 U.S.C. § 926C (the Law Enforcement Officers Safety Act or "HR 218"), which authorizes qualified retired law enforcement officers to carry a concealed firearm nationwide.  He is also qualified under pending

federal legislation (H.R. 2243), which additionally authorizes retired officers to carry concealed firearms in certain federal facilities.

6.    The Plaintiff frequently travels by air nationwide to lead training seminars and consult law enforcement agencies on policies and practice. He has been enrolled in the Global Entry Trusted Traveler program (which includes TSA PreCheck) for almost two decades. This enrollment is essential to the Plaintiff's work-related travel. Notably, Plaintiff has no history of TSA violations or security incidents in more than 25 years of flying with a firearm.

7.    The Defendant Transportation Security Administration ("TSA") is a federal component agency of the U.S. Department of Homeland Security ("DHS"), responsible for aviation security, including administration of the TSA PreCheck program and enforcement of federal transportation security regulations. Defendant David Pekoske is the Administrator of TSA, and Defendant Alejandro Mayorkas is the Secretary of DHS. Both are sued in their official capacities only. At all relevant times, Defendants (through their agents and employees), acted under the color of federal law and are responsible for the unlawful actions described herein.

## FACTUAL ALLEGATIONS

8.    On May 30, 2025, Plaintiff passed through TSA airport screening in Jacksonville, Florida. Plaintiff transported his registered personal firearm in his checked luggage, which has a hardened shell on all sides with mechanical locks. Due

to luggage small size constraints, he did not use a separate smaller locked gun case inside the luggage which is preferred by TSA. When the Plaintiff checked his secured luggage, he believed that he was in full compliance with TSA rules for transporting a firearm in a hardened key locked checked baggage.

9.    During TSA's routine x-ray screening of checked baggage, a TSA officer observed Plaintiff's firearm inside his locked hardened luggage. TSA determined that the firearm was "improperly packaged" because it was not in a discrete locked container inside the luggage, as required by 49 C.F.R. § 1540.111(c). TSA's checked baggage screening area is in a separate secured screening location, (not accessible to traveling passengers). The Plaintiff was not charged with any crime in connection with this incident and always remained fully cooperative with TSA officials and law enforcement officers assigned to Jacksonville International Airport.

10.    According to TSA records, there is no evidence of a security threat or willful misconduct. The circumstances indicate that the Plaintiff's actions constitute, at most, an inadvertent packing error rather than an intentional violation or attempt to bypass security protocols. The firearm was not accessible to terminal passengers and did not present any risk to TSA personnel at the screening checkpoint. Therefore, the Plaintiff's error did not cause an alert or pose an actual security concern to the traveling public.

11.    TSA's enforcement guidance indicates that a **first-time violation** involving an improperly packed or undeclared firearm in checked baggage typically warrants only a Warning Notice, rather than a punitive sanction.   Indeed, TSA's published penalty matrix provides that for a first offense of an "Undeclared and/or improperly packaged unloaded firearm," the appropriate disposition is a warning notice (with civil monetary penalties reserved for subsequent offenses).   Despite this guidance, TSA treated Plaintiff far more harshly and arbitrarily than similarly situated first-time offenders in comparable incidents.   See ("Exhibit E") attached hereto.

### Summary Imposition of One-Year Disqualification

12.    TSA's NOV did not give prior notice of their preemptive suspension of the Plaintiff's PreCheck access.   By letter dated June 13, 2025, TSA's Security Operations issued Plaintiff a formal Notice of Violation ("NOV"), Case No. 2025JAX0130, the NOV alleged a regulatory violation of 49 C.F.R. § 1540.111 and proposed civil penalty of $1,700, See ("Exhibit A") attached hereto.   Notably, this correspondence did not mention or warn of their actual suspension was afoot before the issuance of their NOV.   Furthermore, the Plaintiff received no separate written notification at that time regarding their suspension of his TSA PreCheck and Trusted Traveler status.

13.    The Plaintiff first learned that his TSA PreCheck eligibility had been suspended when he attempted to use the TSA PreCheck Lane on a subsequent flight

in late June 2025 and was denied expedited screening. An airline agent verbally informed him at the airport that his Known Traveler number/PreCheck enrollment was suspended. Only after the Plaintiff persistently inquired with TSA Customer Service did he receive an <u>email</u> on July 2, 2025, confirming that his TSA PreCheck benefits were suspended for one year. See ("Exhibit D") attached hereto.

14.    The belated email provided no further explanation for the suspension and offered no avenue for an interim due process or prompt post-deprivation review of their preemptive punishment. According to TSA policy, if a traveler commits certain security violations—including a firearm incident in checked baggage in violation of the rules—the traveler is "denied expedited screening for some time," with the duration "related to the seriousness of the violation." TSA publicly acknowledges that for a first offense, a Trusted Traveler membership suspension may last up to five years.

15.    In this case, TSA imposed a one-year PreCheck suspension—the maximum penalty for a first offense—following a minor technical infraction, despite the Plaintiff's record of exemplary travel conduct. This decision resulted in the most severe sanction available short of the five-year suspension reserved for serious violations, even though the incident was widely regarded as an inadvertent and minor breach with no actual security risk.

## No Prior Suspension Notice or Hearing

16.     The Plaintiff is suffering an immediate suspension without prior notice or interim process.   No advance notice was given that his Trusted Traveler (TSA PreCheck) benefits would be suspended, nor any opportunity for him to contest the suspension <u>before</u> it took effect.  The suspension of the Plaintiff's PreCheck status was automatic upon TSA's preliminary determination that a violation occurred.

17.     The Plaintiff was never offered any kind of pre-suspension interim hearing or even prompt post-suspension review directed specifically at the loss of his PreCheck travel.  He did not waive any such hearing; rather, TSA's regulations and policies simply failed to afford him any meaningful due process to challenge the suspension of his Trusted Traveler benefits as a distinct issue separate from the ordinary civil penalty process.

18.     The NOV merely directed the Plaintiff to respond to TSA's proposed monetary civil penalty by either requesting an informal conference or electing a formal hearing before a TSA Administrative Law Judge ("ALJ").  However, TSA provided no interim mechanism to appeal or obtain prompt review of their suspension, which went into effect immediately and was not stayed during the pendency of their civil penalty adjudication.   TSA treated the loss of PreCheck privileges as a mere collateral consequence of the incident – something for the Plaintiff to endure without any

individualized interim due process on whether such a severe sanction was warranted under the circumstances.

19.    Lastly, TSA's policy in this regard fails the *Mathews* and *Goldberg* test holding that "due process requires notice and a hearing before termination of benefits." See *Goldberg v. Kelly*, 397 U.S. 254 (1970).  A balancing test is requisite for pre-deprivation or prompt post-deprivation hearings. *Mathews v. Eldridge*, 424 U.S. 319 (1976).  Plaintiff argues that analogous to *Mathews*, TSA PreCheck travel has a reasonable expectation protected liberty interest attached.  *Kent v. Dulles*, 357 U.S. 116 (1958).  Procedural due process is required where agency action imposes stigma and tangible burdens. *Sanchez v. United States*, 707 F. App'x 497, 501 (11th Cir. 2017).

### Plaintiff's Administrative Response and Mitigation Efforts

20.    Within the timeframe allowed by the NOV, the Plaintiff submitted a written response on June 23, 2025, to TSA's Special Enforcement Program Office, in which he elected an informal conference and sought mitigation of the proposed civil fine.

21.    In response, the Plaintiff took responsibility for the packaging mistake but emphasized several mitigating factors including, but not limited to: (a) his distinguished 20+ year career in New York City law enforcement, (including SWAT and instructor experience), (b) his current status under ("HR 218") and pending ("HR 2243") LEOSA Reform Act for qualified retired law enforcement officers; (c) his

flawless record of compliance with TSA and FAA regulations over decades of travel, with no prior violations; (d) the lack of any criminal intent or dangerous conduct – as evidenced by the fact that the firearm was secured in hardened, locked luggage – demonstrating the incident was a good-faith mistake rather than a willful flouting of rules; and (e) his prompt corrective action after the incident to immediately purchased a smaller TSA-compliant hard-sided firearm case for future travel to ensure full compliance going forward. See ("Exhibit B") attached hereto.

### Request to Reinstate PreCheck

22.    In the same June 23 response, Plaintiff provided proof of his purchase of a TSA compliant gun case and expressed his continued commitment to abide by all security requirements. Given the credibility of the mitigating factors, the Plaintiff sought leniency in written notice noting specifically, that TSA waive or substantially reduce the civil penalty and issue at most a formal warning instead of any fine or further sanction. Crucially, Plaintiff urged TSA to reinstate his Global Entry/TSA PreCheck privileges. He explained that the sudden loss of expedited screening was causing significant hardship on him as a frequent business traveler and TSA's fine and disqualification of PreCheck was disproportionate under the circumstances.

### Acknowledgment and Ongoing Delay

23.    TSA acknowledged receipt of the Plaintiff's response and indicated that the case would be forwarded to a TSA attorney for review. TSA advised that the

resolution of the enforcement matter <u>could take several months</u>.  After realizing that the administrative process would likely not conclude before his next scheduled trips—and that his PreCheck suspension would remain in effect throughout—Plaintiff made a plea for interim relief.

24.    By letter dated June 27, 2025, the Plaintiff formally requested that TSA immediately restore his TSA PreCheck benefits for the duration of the enforcement proceedings, rather than forcing him to wait potentially many months under suspension.  In this letter, the Plaintiff invoked fundamental fairness and due process considerations.  See ("Exhibit C") attached hereto.

25.    He specifically cited the *Mathews* balancing test noting that: (a) his private interest in retaining TSA PreCheck (i.e. timely and efficient travel for his work) is substantial; (b) the risk of an erroneous or excessive deprivation of that interest is high, given his lack of any prior violations and the minor, technical nature of this incident; and (c) TSA's interest in aviation security would not be compromised by interim relief, since the Plaintiff is a vetted, low-risk traveler (as demonstrated by his background and credentials).  The Plaintiff would still be subject to screening in any event.

26.    All three *Mathews* factors weighed heavily in the Plaintiff's favor of interim due process or at least an interim temporary reinstatement of PreCheck pending the outcome.   In the June 27 letter, the Plaintiff further observed that depriving him of such an important travel privilege with no interim relief appeared

inconsistent with due process precedent, which generally requires notice and an opportunity to be heard <u>before</u> the government deprives an individual of a significant liberty or property interest.

27.    At the time of this amended filing, TSA has not responded to or approved Plaintiff's request for interim reinstatement of PreCheck privileges.  TSA has failed to offer prompt relief or a specific process to review the suspension, so Plaintiff continues to face penalties as the administrative process proceeds slowly.

28.    The one-year suspension of the Plaintiff's TSA PreCheck privileges has resulted in ongoing and significant harm to the Plaintiff's professional activities.  The Plaintiff's role as a public safety consultant requires frequent air travel, and reliance on the TSA PreCheck program—obtained through paid enrollment and utilized over several years—is essential for efficient airport security clearance via dedicated lanes and expedited screening procedures.

29.    The loss of this Trusted Traveler benefit forces Plaintiff to submit to standard screening for every trip over the next year, subjecting him to substantially longer lines, delays, and more intrusive screening protocols each time he travels.  This fundamentally undermines Plaintiff's work commitments – for example, he has critical business flights scheduled in September 2025 and beyond where time is of the essence for making scheduled speaking or training engagements.

30.    Without PreCheck, the Plaintiff faces a significantly heightened risk of missing flights or encountering travel delays that could damage his professional reputation and result in lost opportunities.  Moreover, TSA's action effectively brands Plaintiff as a higher-risk traveler, removing him from the Trusted Traveler population despite the absence of any genuine security threat.

31.    This stigmatizes and humiliates the Plaintiff, given his long record of honorable service in law enforcement.  The suspension also deprives Plaintiff of the benefit of the bargain of his PreCheck/Global Entry enrollment (which ordinarily is valid for five years before renewal).  In short, Plaintiff is suffering substantial inconvenience, lost time, and reputational injury, which can be remedied by monetary damages after the fact.

32.    The harm to the Plaintiff is particularly pronounced because it arises from an alleged violation that is still under administrative review and has not been adjudicated on the merits.  By the time TSA's enforcement process concludes (even if Plaintiff is ultimately exonerated or given a greatly reduced sanction), he will <u>already have been deprived of PreCheck for many months or the full year, causing irreversible damage</u>.

33.    The plaintiff has exhausted all feasible administrative avenues to obtain interim relief from the suspension. Further pursuit of administrative remedies is futile and inadequate to prevent irreparable injury, as TSA has made it clear that it will not

expedite or reconsider the PreCheck suspension while its enforcement proceeding is pending. Accordingly, Plaintiff now turns to this Court to vindicate his rights and to obtain timely declaratory relief.

## CLAIMS FOR RELIEF

## COUNT I

### Violation of Fifth Amendment for Denial
### of Procedural Due Process

34. Defendants, acting under color of federal law and TSA policy, have collectively deprived Plaintiff of a liberty and/or property interest, specifically, his TSA PreCheck Trusted Traveler membership and associated benefit of expedited airport screening without due process of law, and contravene to the Fifth Amendment to the United States Constitution. The Plaintiff has a legitimate and substantial interest in his continued participation in the TSA PreCheck program. This interest implicates both his freedom to travel, a liberty interest, and entitlement conferred by the government, (a property interest in the benefits of the Trusted Traveler program once granted after an extensive background investigation.)

35. By suspending the Plaintiff's PreCheck membership for an entire year without notice of specific grounds, a meaningful opportunity to contest the suspension, or present evidence before a neutral decisionmaker and without conducting any hearing or adjudication before or immediately after suspending his

privilege, the Defendants collectively did not provide the procedural safeguards required by the Constitution.

36. The defendants' "automatic" suspension without an interim possess raises a Fifth Amendment's procedural due process protections question. TSA regulations establish expectations of a fair administrative process. This case demonstrates that even discretionary Trusted Traveler memberships are subject to procedural requirements. The *Borowski* Court case is relevant to the instant case as to TSA's adherence to established procedures, in line with principles of procedural due process. See *Borowski v. U.S. Customs & Border Protection* (W.D.N.Y. 2024).

37. Due process requires notice and hearing before termination of a significant entitlement, *Goldberg v. Kelly*, 397 U.S. 254 (1970); the balancing factors for due process, *Mathews v. Eldridge*, 424 U.S. 319 (1976); and freedom to travel expeditiously as a non-risk passenger is a protected liberty interest, *Kent v. Dulles*, 357 U.S. 116 (1958). The *Mathews* balancing test established by the Supreme Court in 1976 provides a framework for determining the extent of procedural due process required before depriving someone of a protected interest.

38. This test balances three key factors as follows: (1) the private interest affected by the official action, (2) the risk of erroneous deprivation of that interest through the procedures used, and (3) the government's interest, including the burdens of additional or substitute procedural requirements. The courts widely ruled for

plaintiffs by the explicit use of the *Mathews* test to weigh interests. For example, *Elhady* identified the liberty interest in travel and the stigma-plus harm, found a high risk of error given secret criteria, and noted the government could accommodate some process without jeopardizing security. *Board of Regents v. Roth*, 408 U.S. 564 (1972) to "legitimate claim of entitlement."

39.     The *Latif* court addressed the No-Fly List in a similar manner, referencing *Mathews*, *Goldberg*, and other foundational due process cases to assert that the significance of an individual's interest and the potential for error necessitate greater procedural safeguards. A Trusted Traveler membership, once issued, may constitute a property interest—given that the individual has paid a fee and received "trusted" status for a specified period, as here, or at minimum, a liberty interest as it influences one's travel experience and plans.

40.     However, although courts have not conclusively defined this as a legal "right," *Assi v. DHS* (S.D. Fla. 2025), the court held that "TSA PreCheck status is not a legal right" per se, "even if not a right or entitlement, the government cannot impose punitive measures, such as suspension, revocation, and disqualification bans, without some due process." The factual parallels in the above cases, as to the arbitrary or erroneous security-based deprivations, suggest a court would apply *Mathews* and possibly find that TSA's one-size-fits-all suspension policy fails to account for individual circumstances, thus heightening risk of error and due process concerns.

41.    There is a considerable risk of improper deprivation of the Plaintiff's rights resulting from TSA's preemptive, automatic suspension, which is imposed solely on the basis of an alleged violation that has yet to be substantiated in any hearing, and without regard for individual circumstances or mitigating factors indicating that the Plaintiff does not pose a security threat.  Implementing additional or alternative procedures—such as providing a timely post-suspension hearing or interim relief pending comprehensive review—would substantially diminish the likelihood of error while placing only minimal demands on governmental resources.

42.    The government's interest in maintaining aviation security, although significant, did not necessitate bypassing due process in this situation. Allowing the Plaintiff to use TSA PreCheck lanes while undergoing standard security screening procedures and awaiting a hearing would not have significantly affected security interests, given the Plaintiff's thorough vetting and the requirement to still complete the normal screening process like any other passenger.

43.    The Defendants could have maintained security without immediately depriving Plaintiff of expedited screening before notice or other due process.  By failing to tailor their boilerplate response, Defendants violated the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  The Defendants practice failed to safeguard due process before instituting their severe sanction.  Except in truly extraordinary situations, due process requires notice and some kind of hearing before

the government imposes a deprivation of liberty or property.  No such extraordinary circumstances existed here would justify the lack of any pre-deprivation process as in the Plaintiff's case.

44.    Defendants' actions have violated Plaintiff's rights under the Due Process Clause of the Fifth Amendment, and no adequate alternative legal remedy exists against TSA for this constitutional violation.   Here, TSA's preemptive one-year suspension of Plaintiff's TSA PreCheck privileges – implemented with no prior notice or opportunity to be heard – is an agency action that is directly impacts the Plaintiff's constitutional right to due process which was affected without observance of the procedure that due process requires.

45.    The *Latif* Court addressed a serious deprivation—a total flight ban—but its reasoning is relevant to any government action that penalizes individuals without interim due process. If TSA or CBP suspends TSA PreCheck or Global Entry for an alleged first-time violation, such as carrying a firearm in a bag, *Latif* indicates due process should be afforded: travelers should get notice and a chance to respond before being banned. TSA's current practice of automatic PreCheck disqualification without a hearing for first-time offenders could be contested based on the *Latif* Court's logic.

46.    The interest involved, which is expedited screening, may be considered less significant than the loss of expedited access, a non-negligible consequence—particularly when associated with one's reputation as a "trusted traveler."  A court may

determine that a notice-and-response procedure is necessary if factual disputes exist. In summary, *Latif* establishes that considerations of administrative efficiency or security do not override due process requirements. *Latif et al. v. Holder*, D. Or. 2014, No-Fly List Redress Declared Unconstitutional; *Paul v. Davis*, 424 U.S. 693 (1976) (stigma-plus theory for reputational harm).

47.    Accordingly, the suspension is argued to be unconstitutional.    The Plaintiff seeks an order declaring that Defendants' suspension of Plaintiff's TSA PreCheck enrollment is void and directing the restoration of Plaintiff's Trusted Traveler privileges. The *Ibrahim* Court demonstrates that a court can require an agency to rescind a suspension and clear the claimant's record.

48.    It also outlines possible remedies in the reinstatement of benefits such as flying privileges or PreCheck, modification of databases that contributed to the deprivation, and transparency for the individual. See, (N.D. Cal. 2014); *Elhady* et al. v. *Kable*, (E.D. Va. 2019) Watchlist (TSDB), Declared Unconstitutional at District Court. The Eleventh Circuit precedent recognizes liberty interest in travel or procedural safeguards in agency sanctions. *Grayden v. Rhodes,* 345 F.3d 1225 (11th Cir. 2003).

## COUNT II

### Violation of the Administrative Procedure
### Act by an Arbitrary and Capricious
### Agency Action

49.    The Plaintiff also seeks relief under the Administrative Procedure Act (APA), which provides for a reviewing court to "hold unlawful and set aside," agency action that is "contrary to constitutional right," or taken "without observance of procedure required by law."  5 U.S.C. § 706(2)(B), (D).

50.    Defendants' decision to suspend Plaintiff's TSA PreCheck privileges for one-year was arbitrary, capricious, an abuse of discretion, not in accordance with law, and in violation of the APA, 5 U.S.C. § 706(2)(A).  The APA governs how federal administrative agencies propose and establish regulations, and how they administer adjudications and discretionary actions.  It provides a right of judicial review for individuals, "adversely affected or aggrieved by agency action."  Plaintiff is relying on 5 U.S.C. § 702 and seeking relief under § 706 as follows:

**Key APA Sections Relevant to This Claim:**

- § 702 – Right to Judicial Review:

    o  You may challenge final agency action that adversely affects your legal rights.

- § 704 – Final Agency Action:

    TSA's decision to suspend PreCheck access is a final action because it:

        o  Concludes the agency's decision-making process; and
        o  Determines legal rights and obligations (i.e., loss of expedited screening privileges).

- § 706 – Scope of Judicial Review:

    The reviewing court shall:

- o Hold unlawful and set aside agency action that is:
  - Arbitrary, capricious, or abuse of discretion (§ 706(2)(A)).
  - Contrary to constitutional rights (§ 706(2)(B)).
  - Without observance of procedure required by law (§ 706(2)(D)).

51.     Here, TSA has essentially put the cart before the horse.  The ADA deems suspension of expedited screening a "final action," contrary to their preemptive suspension which may be deemed arbitrary, capricious, or abuse of discretion (§ 706(2)(A)), contrary to constitutional rights (§ 706(2)(B)) and without observance of procedure required by law (§ 706(2)(D)).  Even setting aside the lack of due process, the substance of TSA's punishment was grossly disproportionate to the mitigating circumstances and is unsupported by the evidence.  In particular, the Defendants' rationale for preemptively imposing the maximum one-year suspension was irrational. *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983).

52.     There is no evidence indicating that the Plaintiff posed a credible threat to aviation security or public safety. Nonetheless, Defendants applied a one-year disqualification as if the Plaintiff were a dangerous individual. In fact, the Plaintiff is a long-standing Trusted Traveler who has successfully completed all background checks related to TSA PreCheck and holds HR 218 firearm credentials, in addition to having an established career in law enforcement.

53.     The May 30th incident did not involve any attempt to bypass security screening, nor any act of violence or nefarious intent – at most, it was a technical

packing violation, which TSA officials discovered and resolved on-site (the firearm was secured and held by authorities until it could be properly packaged). TSA's severe punitive response lacks a rational connection between the known facts (an inadvertent mistake by an otherwise model traveler that resulted in no harm), and the choice made (branding him ineligible for expedited screening for an entire year).

54.     The Defendants disregarded mitigating factors and agency guidance and failed to consider important aspects of the issue and ignored compelling mitigating factors indicating that Plaintiff's conduct was neither willful nor likely to recur. Plaintiff had decades of spotless compliance, extensive law enforcement training, and he took immediate corrective measures after the incident.

55.     TSA's own enforcement guidance, as noted above, suggests that a first-time offense of this nature (improperly packaged unloaded firearm in checked baggage) should typically result in a Warning Notice, not a suspension or heavy penalty. Failure to consider relevant factors renders agency action unlawful. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971).

56.     By drastically deviating from their established guidance and imposing the harsh suspension without a reasonable explanation, Defendants acted inconsistently and without any rational analysis. A reasonable explanation is required when an agency changes or departs from policy. *FCC v. Fox Television Stations*, 556

U.S. 502 (2009). Courts have deemed unexplained policy shifts as arbitrary and capricious. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211 (2016).

57. The severity of the sanction is grossly disproportionate to the minor infraction, suggesting that the agency either considered impermissible factors or entirely failed to consider the relevant mitigating factors of Plaintiff's lack of culpability before their suspension.

58. For example, in May 2024, the Ninth Circuit reversed and held that CBP's removal of *Jajati* from SENTRI is subject to judicial review. The panel noted Congress had set criteria in law (8 U.S.C. § 1365b and related regulations), for Trusted Traveler programs, providing a yardstick to judge CBP's actions. Contrary to CBP's "unlimited, standardless discretion" claim, the court found meaningful standards exist to evaluate if suspensions were arbitrary or an abuse of discretion. The case was remanded to the district court to assess CBP's justification, if any, under these standards.

59. This significant procedural due process victory upholds the right of a Trusted Traveler to obtain court review of a suspension, ensuring the agency cannot hide behind unfettered discretion. While *Jajati's* complaint sounded in APA, the Ninth Circuit's reasoning vindicates core due process values – namely, that an individual cannot be deprived of a government benefit arbitrarily or without some reason

grounded in the rules.  See *Jajati v. U.S. Customs & Border Protection* (S.D. Cal. 2022; 9th Cir. 2024)

60.    Defendants never articulated a satisfactory explanation for why a preemptive full year's PreCheck suspension (and its attendant burdens on Plaintiff's travel), is warranted in this case.   The only notice Plaintiff received about the suspension was a terse form email referencing a regulatory violation, with no reasoning as to why such a lengthy exclusion was necessary for security or appropriate given Plaintiff's background.

61.    An agency action of this magnitude, taken without a reasoned basis, is the epitome of arbitrary and capricious decision-making.  TSA PreCheck suspensions of benefits must comply with procedural and APA standards.  *Mustapha Assi v. DHS*, No. 23-CV-23596, 2025 WL 1880338 (S.D. Fla. July 8, 2025).

## CONCLUSION

62.    The 28 U.S.C. § 2201 outlines the legal framework for declaratory judgments in the United States. It allows a court to declare the rights and legal relations of interested parties in a case of actual controversy, even if no other relief is sought.  These declarations have the force and effect of a final judgment.   By the Defendants imposing a draconian penalty of ($1700.00 and one-year suspension), that runs afoul to the evidence before the agency which showed the Plaintiff to be a low-risk responsible law enforcement traveler.  By TSA failing to consider less onerous

alternatives and relevant mitigating information PRIOR to the suspension of the Plaintiff's travel benefits, the Defendants acted arbitrarily and capriciously under the APA and their accessed penalties should be set aside upon the Court's meticulous review under 5 U.S.C. § 706.

63.     Moreover, to the extent the suspension and fine was imposed in a manner that violates the Constitution and the APA's procedural requirements, it is also in excess of Defendants' statutory authority. The Plaintiff therefore seeks an order from this Court declaring that the one-year suspension of his TSA PreCheck privileges was arbitrary, capricious, and unlawful, and enjoining Defendants from continuing to enforce that suspension and fine against him.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and grant the following relief:

a) Declaratory Judgment: An order pursuant to 28 U.S.C. § 2201 that Defendants' suspension of Plaintiff's TSA PreCheck enrollment (Trusted Traveler privileges) without affording pre-deprivation due process was unconstitutional and in violation of Plaintiff's Fifth Amendment rights.

b) Injunctive Relief: An order vacating and expunging the record of the Defendants' **preemptive suspension** and **penalty fine** and order the immediate reinstatement of Plaintiff's TSA PreCheck/Global Entry membership. The order should prohibit from imposing any future suspension or fine based on the May 30, 2025, incident. Every day of suspension is an additional day the

Plaintiff's liberty interest in travel is burdened without constitutionally required process. The Federal courts recognize that ongoing constitutional violations constitute irreparable harm as a matter of law. *League of Women Voters v. Browning*, 863 F. Supp. 2d 1155, 1167 (N.D. Fla. 2012) ('*A restriction on constitutional rights, even for minimal periods of time, constitutes irreparable harm.*')

c) Fees and Costs: Because the government's position lacked substantial justification for their preemptive suspension without interim due process, an award to the Plaintiff for his reasonable court fees, costs, and other litigation expenses incurred in bringing this action, is warranted here as provided by the Equal Access to Justice Act (28 U.S.C. § 2412) or other applicable law.

The Plaintiff moves for such further relief as the Court deems just and proper in the interests of justice.

Dated: August 14, 2025.

Respectfully submitted,

/s/ *Eric Josey*

ERIC JOSEY, Plaintiff
250 Palm Coast Pkwy NE, Suite 607, PMB 173
Palm Coast, FL 32137
Email: premier.consulting173@aol.com
Phone: (917) 882-1330

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 15, 2025, and pursuant to Fed. R. Civ. P. 5(d)(1)(B) and Local Rule 1.10(c), M.D. Fla., a true and correct copy of the foregoing Amended Verified Complaint and attachments was mailed via United States Postal Service First-Class Mail to the Clerk of the Clerk and the following defendant parties:

Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Transportation Security Administration (TSA)
Office of Chief Counsel – TSA-2
6595 Springfield Center Drive
Springfield, VA 20598-6002

Department of Homeland Security, General Counsel
Office of the General Counsel
U.S. Department of Homeland Security
2707 Martin Luther King Jr. Ave SE
Washington, DC 20528-0485

Dated: August 14, 2025

By: */s/ Eric Josey*
ERIC JOSEY, Plaintiff

## STATEMENT OF COMPLIANCE

Plaintiff Eric Josey, hereby certifies that the attached Amended Verified Complaint complies with the directives of the Court's Order and Local Rules and thus states the following:

1. That each each cause of action is separated into a distinct count in compliance with Fed. R. Civ. P. 8(a) and 10(b) and eliminates the "shotgun" pleading identified in the Court's Order at (Doc. 9).

2. That the complaint regarding typeface is in (Book Antiqua at Font 13-points), spacing (1.5), and margins (1 inch), compliance with Local Rule 1.08 and the directive of the court.

3. That the complaint provides a short and plain statement of each claim sufficient to give Defendants fair notice, in accordance with the directives of the Court and the Eleventh Circuit's guidance in *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313 (11th Cir. 2015).

Dated: August 14, 2025.

By: */s/ Eric Josey*
_____
ERIC JOSEY, Plaintiff

## **VERIFICATION**

I, ERIC JOSEY, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746, and under the laws of the United States of America as follows:

I am the Plaintiff in the above-entitled action.  I have promulgated the foregoing Verified Complaint and know the contents thereof and the same is true to the best of my knowledge except as to matters therein stated to be alleged on information and belief, and to those matters, I believe them to be true.

Dated this 14th day of August 2025.


By: */s/ Eric Josey*
ERIC JOSEY, *Plaintiff*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

|  |  |
|---|---|
| ERIC JOSEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 3:25-cv-00829-MMH-LLL |
| | ) |
| TRANSPORTATION SECURITY | ) |
| ADMINISTRATION; DAVID PEKOSKE, in his | ) |
| official capacity as Administrator of the | ) |
| Transportation Security Administration; | ) |
| and ALEJANDRO MAYORKAS, in his official | ) |
| capacity as Secretary of the U.S. | ) |
| Department of Homeland Security, | ) |
| | ) |
| Defendants. | ) |

**EXHIBITS TO VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT**

**EXHIBITS**

A.    TSA Notice of Violation Form.

B.    Plaintiff's Statement Letter of Mitigating Factors.

C.    Plaintiff's Request Letter for Interim Relief.

D.    TSA Email Response Regarding Suspension Query.

E.    TSA Enforcement Sanction Guidance Policy.